1

2

3

4

5

6                       UNITED STATES DISTRICT COURT

7                            DISTRICT OF NEVADA

8                                   * * *

9    LINKSTON LIONS,                    | Case No. 3:13-cv-00321-RCJ-WGC

10                        Petitioner,   |            ORDER

11        v.

     RENEE BAKER, et al.,
12
                          Respondents.
13

14         This *pro se* habeas matter under 28 U.S.C. § 2254 filed by Nevada state prisoner

15   Linkston Lions comes before the court for final disposition on the merits (ECF No. 10).

16   **I.    Procedural History**

17         Lions was tried on several charges arising out of a robbery where Lions ordered

18   a pizza to be delivered to an abandoned residence in Las Vegas, choked the delivery

19   driver with a cord until he lost consciousness, robbed the driver, and stole his vehicle

20   (exhibits 4, 12 to motion to dismiss).[1]  A jury found Lions guilty of robbery with the use

21   of a deadly weapon, grand larceny auto, battery with the use of a deadly weapon, and

22   battery by strangulation.  Exh. 35.  At sentencing, the State struck the conviction for

23   battery by strangulation.  Exh. 42 at 4.  The state district court sentenced petitioner as

24   follows: count 2 - robbery with the use of a deadly weapon - 48 to 120 months, with a

25   consecutive 48 to 120 months for the deadly weapon enhancement; count 3 - grand

26   larceny auto - 24 to 60 months to run concurrent to count 2; count 4 - battery with the

27

28   [1] The exhibits referenced in this motion are exhibits to respondents' motion to dismiss, ECF No. 19, and
     are found at ECF Nos. 20-23.

                                          1

use of a deadly weapon - 12 to 120 months consecutive to count 2.  *Id.* at 8. Judgment of conviction was entered on February 23, 2011.  Exh. 43.

The Nevada Supreme Court affirmed the convictions on November 18, 2011, and remittitur issued on December 15, 2011.  Exhs. 59, 61.  The Nevada Supreme Court affirmed the denial of Lions' state postconviction petition on April 10, 2013, and remittitur issued on May 9, 2013.  Exhs. 82, 84.

Petitioner dispatched his federal habeas petition on June 11, 2013 (ECF No.10).  Respondents moved to dismiss several grounds, and the court granted the motion to dismiss in part, dismissing grounds 4, 5, 6, 7, and 9 as procedurally barred (ECF Nos. 19, 30).  Respondents have now answered the remaining claims (ECF Nos. 36, 39), and Lions has replied (ECF Nos. 38, 40).[2]

## II.    Legal Standards

### A.  AEDPA

28 U.S.C. § 2254(d), a provision of the Antiterrorism and Effective Death Penalty Act (AEDPA), provides the legal standards for this court's consideration of the petition in this case:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court

---

[2] Respondents filed an answer (ECF No. 36) and an amended answer (ECF No. 39), and they explain that the original answer inadvertently failed to address one ground in the petition.  Petitioner filed a reply/traverse (ECF No. 37) and a reply/traverse to the amended answer (ECF No. 40), and the court has considered all filings.

convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693-694 (2002). This Court's ability to grant a writ is limited to cases where "there is no possibility fair-minded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing the AEDPA standard as "a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt") (internal quotation marks and citations omitted).

A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Lockyer*, 538 U.S. at 73 (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000), and citing *Bell*, 535 U.S. at 694.

A state court decision is an unreasonable application of clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer*, 538 U.S. at 74 (quoting *Williams*, 529 U.S. at 413). The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous; the state court's application of clearly established law must be objectively unreasonable. *Id.* (quoting *Williams*, 529 U.S. at 409).

To the extent that the state court's factual findings are challenged, the "unreasonable determination of fact" clause of § 2254(d)(2) controls on federal habeas

review. *E.g., Lambert v. Blodgett*, 393 F.3d 943, 972 (9th Cir.2004). This clause requires that the federal courts "must be particularly deferential" to state court factual determinations. *Id.* The governing standard is not satisfied by a showing merely that the state court finding was "clearly erroneous." 393 F.3d at 973. Rather, AEDPA requires substantially more deference:

> .... [I]n concluding that a state-court finding is unsupported by substantial evidence in the state-court record, it is not enough that we would reverse in similar circumstances if this were an appeal from a district court decision. Rather, we must be convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record.

*Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir.2004); *see also Lambert*, 393 F.3d at 972.

Under 28 U.S.C. § 2254(e)(1), state court factual findings are presumed to be correct unless rebutted by clear and convincing evidence. The petitioner bears the burden of proving by a preponderance of the evidence that he is entitled to habeas relief. *Cullen*, 563 U.S. at 181.

### B.  Ineffective Assistance of Counsel

Ineffective assistance of counsel claims are governed by the two-part test announced in *Strickland v. Washington*, 466 U.S. 668 (1984). In *Strickland*, the Supreme Court held that a petitioner claiming ineffective assistance of counsel has the burden of demonstrating that (1) the attorney made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment, and (2) that the deficient performance prejudiced the defense. *Williams*, 529 U.S. at 390-91 (citing *Strickland*, 466 U.S. at 687). To establish ineffectiveness, the defendant must show that counsel's representation fell below an objective standard of reasonableness. *Id.* To establish prejudice, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* A reasonable probability is "probability sufficient to undermine confidence in

the outcome." *Id*. Additionally, any review of the attorney's performance must be "highly deferential" and must adopt counsel's perspective at the time of the challenged conduct, in order to avoid the distorting effects of hindsight. *Strickland*, 466 U.S. at 689. It is the petitioner's burden to overcome the presumption that counsel's actions might be considered sound trial strategy. *Id*.

Ineffective assistance of counsel under *Strickland* requires a showing of deficient performance of counsel resulting in prejudice, "with performance being measured against an objective standard of reasonableness, . . . under prevailing professional norms." *Rompilla v. Beard*, 545 U.S. 374, 380 (2005) (internal quotations and citations omitted). When the ineffective assistance of counsel claim is based on a challenge to a guilty plea, the *Strickland* prejudice prong requires a petitioner to demonstrate "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

If the state court has already rejected an ineffective assistance claim, a federal habeas court may only grant relief if that decision was contrary to, or an unreasonable application of, the *Strickland* standard. *See Yarborough v. Gentry*, 540 U.S. 1, 5 (2003). There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id*.

The United States Supreme Court has described federal review of a state supreme court's decision on a claim of ineffective assistance of counsel as "doubly deferential." *Cullen*, 563 U.S. at 190 (quoting *Knowles v. Mirzayance*, 129 S.Ct. 1411, 1413 (2009)). The Supreme Court emphasized that: "We take a 'highly deferential' look at counsel's performance . . . through the 'deferential lens of § 2254(d).'" *Id*. at 1403 (internal citations omitted). Moreover, federal habeas review of an ineffective assistance of counsel claim is limited to the record before the state court that adjudicated the claim on the merits. *Cullen*, 563 U.S. at 181-84. The United States Supreme Court has

specifically reaffirmed the extensive deference owed to a state court's decision

regarding claims of ineffective assistance of counsel:

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," *id.* at 689, 104 S.Ct. 2052; *Lindh v. Murphy*, 521 U.S. 320, 333, n.7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles*, 556 U.S. at ——, 129 S.Ct. at 1420. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S. at ——, 129 S.Ct. at 1420. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Harrington*, 562 U.S. at 105. "A court considering a claim of ineffective assistance

of counsel must apply a 'strong presumption' that counsel's representation was within

the 'wide range' of reasonable professional assistance." *Id.* at 104 (quoting *Strickland*,

466 U.S. at 689). "The question is whether an attorney's representation amounted to

incompetence under prevailing professional norms, not whether it deviated from best

practices or most common custom." *Id.* (internal quotations and citations and quotations

omitted).

### III.   Instant Petition

### A.  Claims other than Ineffective Assistance of Counsel

The court will first consider the claims of State and trial court error and then turn to

the claims of ineffective assistance of counsel.

### Ground 3

Lions contends that the State violated *Brady v. Maryland*, 373 U.S. 83 (1963),

when it failed to disclose contact information for any neighbors police interviewed near

the residence where the victim was attacked (ECF No. 10, pp. 23-29).

The State has a duty to turn over evidence that is favorable to the defense.  *See*

*Strickler v. Green*, 527 U.S. 263, 280 (1999).  The State violates due process if it fails to

turn over evidence that is "favorable to the accused, either because it is exculpatory, or

because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued, [that is, it must have been reasonably probable that the outcome of trial would have been different if the suppressed evidence had been disclosed to the defense]."  *Id.* at 281-82; 289.

The Nevada Supreme Court denied this claim on direct appeal, determining that (1) the State provided Lions with sufficient information such that the information Lions claims he could have uncovered had he been provided with the contact information for the neighbors "was discoverable with the exercise of reasonable diligence," and (2) the information was immaterial "because there was no possibility that its timely disclosure would have affected the outcome of the trial…."  Exh. 59, pp. 3-4.

At trial, police testified that neighbors had told at least one investigating officer that the residence was vacant, the owners were in California, people sometimes went into the patio area of the residence to do drugs, and squatters sometimes lived there. Exh. 28, p. 62-64,181, 191, 194.  Lions argues that he specifically requested this information in a motion to compel discovery and that the evidence would have allowed him to establish that other squatters lived there and he did not have exclusive possession of the residence (ECF No. 10, pp. 23-29).

Ground 3 lacks merit.  The identities of the neighbors living near the residence were certainly discoverable with the exercise of reasonable diligence.  The neighbors with whom police spoke did not witness the incident and stated only that no one lived at the residence and squatters sometimes occupied it.  Lions does not explain how there is anything exculpatory or material about these statements.  In light of the evidence presented at trial, discussed below, Lions has failed to demonstrate that the Nevada Supreme Court's determination that the identity of the neighbors was reasonably discoverable and was not material was a decision contrary to, or involving an unreasonable application of, clearly established federal law, as determined by the U.S. Supreme Court, or was based on an unreasonable determination of the facts in light of

the evidence presented in the state court proceeding.  28 U.S.C. § 2254(d).  Federal

habeas relief is thus denied as to ground 3.

**Ground 8**

Lions argues that his Fourteenth Amendment due process rights were violated

when the district court erred in instructing the jury on flight because the State failed to

present any evidence of flight (ECF No. 10, pp. 60).

The jury received the following instruction:

> The flight of a person immediately after the commission of a crime,
> or after he is accused of a crime, is not sufficient in itself to establish his
> guilt, but is a fact which, if proved, may be considered by you in light of all
> other proved facts in deciding the question of his guilt or innocence.
> Whether or not evidence of flight shows a consciousness of guilt and the
> significance to be attached to such a circumstance are matters for your
> deliberation.

Exh. 33, instruction no. 28.

The Nevada Supreme Court agreed that the district court erred by giving the flight

instruction "because there was no evidence that Lions 'fled with consciousness of guilt

and to evade arrest,' *Rosky v. State*, 111 P.3d 690, 699-700 (Nev. 2005), but the error

was harmless because it did not substantially affect the jury's verdict." Exh. 59, p. 2.

The evidence adduced at trial revealed that Lions' DNA was identified on the cord

used to strangle the victim, that the victim identified Lions at trial as "somebody who

could fit what I saw," that Lions was in possession of the victim's car at the time he was

arrested and that Lions had used the victim's credit card to try to wire himself money.

Exh. 28, pp. 25, 109-117, 163-164, 213-214.

Lions has not demonstrated that the Nevada Supreme Court's determination that

the district court's error was harmless was contrary to, or involved an unreasonable

application of, clearly established federal law, as determined by the U.S. Supreme

Court, or was based on an unreasonable determination of the facts in light of the

evidence presented in the state court proceeding.  28 U.S.C. § 2254(d).  Accordingly,

federal habeas relief is denied as to ground 8.

**Ground 10**

Lions contends that the district erred in admitting evidence of Lions' uncharged bad acts—switching the license plates on the vehicle at issue—without conducting a *Petrocelli* hearing or providing the jury with a limiting instruction in violation of his Fourteenth Amendment due process rights (ECF No. 10, p. 65-66).

The Nevada Supreme Court denied the claim on appeal, explaining:

> Although the district court failed to conduct a proper hearing, we conclude that its decision to admit this evidence was not manifestly wrong and reversal is not warranted because the evidence was admissible under the test announced in *Tinch v. State*, 946 P.2d 1061, 1064-1065 (Nev. 1997). . . . We further conclude that the district court's failure to instruct the jury on the limited use of this uncharged bad act evidence was harmless error under the facts of this case.

Exh. 59, p. 3.

At trial, a police officer testified that the stolen vehicle came to his attention in a motel parking lot because it was backed into a space, had no front license plate, and when he ran the rear plate it did not belong to the vehicle. Exh. 28, pp. 132-133. The prosecutor had referred to the switched plates during opening arguments, and defense counsel objected and moved for a mistrial, arguing that this was prejudicial uncharged bad act testimony. *Id.* at 104-105. The prosecution indicated that the photos taken of the vehicle when police arrested Lions at the motel—which depicted the switched license plates—were in the case file shared with the defense. *Id.* at 105. The district court denied the motion for a mistrial. *Id.* at 106.

While Lions was not charged with displaying a fictitious license plate, he was on trial for stealing the car. Lions has failed to show how the Nevada Supreme Court's determination that the district court's error was harmless was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the U.S. Supreme Court, or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). Therefore, federal habeas relief is denied as to ground 10.

9

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Ground 11**

Lions argues that the State failed to gather and preserve evidence based on Lions' informing police that he was not responsible for the Western Union transaction at issue, but that someone else had "opted to use his contact information" (ECF No. 10, p. 68; ECF No. 10-1, p. 1).   He alleges that the State did not attempt to subpoena an audio recording of the call to Western Union for nearly three months—at which point the recordings no longer existed—which violated his Fourteenth Amendment fair trial rights. Lions asserts that "he told police he didn't make the call and who was responsible, so . . . assuming the voice on the tapes was not Mr. Lions'," there was a reasonable probability of a different outcome on the robbery count had the police obtained the tape (ECF No. 10-1, p. 1).

The State's loss or destruction of potentially exculpatory evidence violates due process only when the evidence "possess[es] an exculpatory value that was apparent before the evidence was [lost or] destroyed, and [is] of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *California v. Trombetta*, 467 U.S. 479, 489 (1984); *see also United States v. Bingham*, 653 F.3d 983, 994 (9th Cir. 2011).  Moreover, "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988); *see also Illinois v. Fisher*, 540 U.S. 544, 547–48 (2004) (*per curiam*).  "The presence or absence of bad faith by the police for purposes of the Due Process Clause must necessarily turn on the police's knowledge of the exculpatory value of the evidence at the time it was lost or destroyed."  *Youngblood*, 488 U.S. at 56 n. *; *United States v. Sivilla*, 714 F.3d 1168, 1172 (9th Cir. 2013).  Even negligence in failing to preserve potentially useful evidence is not sufficient to constitute bad faith and does not violate due process.  *Youngblood*, 488 U.S. at 58; *see also United States v. Flyer*, 633

10

F.3d 911, 916 (9th Cir. 2011) ("Bad faith requires more than mere negligence or recklessness.").

The Nevada Supreme Court rejected this claim:

> To succeed on a claim that an injustice occurred as a result of the State's failure to obtain evidence, the defense must demonstrate that the evidence was material by showing "a reasonable probability that, had the evidence been available to the defense, the result of the proceedings would have been different." *Daniels v. State*, 956 P.2d 111, 115 (Nev. 1998). Here, Lions asserts that "assuming that the voice on the tape did not belong to [him]," the tape was material. We conclude that Lions' bare speculation does not show a reasonable probability that the trial result would have been different if the police had obtained the recording, *see Steese v. State*, 960 P.2d 321, 329 (Nev. 1998), and that the district court did not abuse its discretion by refusing to give the proposed jury instruction . . . .

Exh. 59, pp. 3-4.

At trial, a Western Union security manager of investigations testified that a person attempted via telephone to wire money using the victim's credit card to payee Linkston Lions. Exh. 28 pp. 106-122. The security manager testified that he did not know if the call had been recorded by the third-party vendor and that if it had the recording would only have been retained for a short period of time. He also testified that he told law enforcement that they would have to send a subpoena to the custodian of records to contact the vendor. *Id.* A police officer also testified that he attempted to obtain the recording, if any, but was unable to do so. *Id.* at 194.

Respondents first argue that, while *Youngblood* identifies a standard for evaluating the State's loss or destruction of potentially exculpatory evidence, they know of no federal law clearly established by the U.S. Supreme Court that establishes a duty to collect evidence. They also argue that even assuming the bad-faith standard of *Youngblood* should apply, had the state courts concluded that the police did not act in bad faith such a result would not be objectively unreasonable and would be "so lacking in justification that there was an error well understood and comprehended in existing

law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103;
ECF No. 39, p. 20.

No evidence presented at trial established that the call had been recorded, Lions
does not allege that the defense was prevented from serving a subpoena to ascertain
whether the call was recorded, and Lions claims only that "assuming that the voice is
not his" the recording would have been material.  Lions has not demonstrated that the
Nevada Supreme Court's determination that Lions' bare speculation did not show a
reasonable probability that the trial result would have been different if the police had
obtained the recording was contrary to, or involved an unreasonable application of,
clearly established federal law, as determined by the U.S. Supreme Court, or was
based on an unreasonable determination of the facts in light of the evidence presented
in the state court proceeding.  28 U.S.C. § 2254(d).  Federal habeas relief is denied as
to ground 11.

### B.  Ineffective Assistance of Counsel Claims

### Ground 1

Lions asserts several instances of ineffective assistance of trial counsel in
violation of his Sixth and Fourteenth Amendment rights (ECF No. 10, pp. 4-17).

In ground 1(A) he argues that trial counsel failed to object to the trial court's
characterization that the victim "identified" Lions in court, because the victim testified
only that Lions "resembled" his attacker.  Id. at 4-6.

The Nevada Supreme Court affirmed the denial of this claim:

> When asked to identify his attacker at trial, the victim testified that he
> "couldn't say for sure" but identified appellant as "somebody who could fit"
> his description of the attacker.  The district court acknowledged this
> identification, and the State clarified that it was with the understanding that
> the jurors heard what the identification was.   Appellant failed to
> demonstrate a reasonable probability of a different outcome had counsel
> objected to the district court's wording.

Exh. 82, p. 2.

Lions challenge lacks merit, and he has failed to meet his burden to demonstrate that the Nevada Supreme Court's decision was contrary to, or involved an unreasonable application of, *Strickland v. Washington*, or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d).

As ground 1(B) Lions contends that trial counsel should have lodged an objection to the prosecutor's statement during closing argument that Lions was riding around in a stolen car and had changed the license plates because Lions was not charged with displaying fictitious license plates; thus the prosecutor improperly tried to show Lions' bad character (ECF No. 10, p. 6).

The Nevada Supreme Court affirmed the denial of this ground, noting that the State's closing argument was a reasonable inference from the facts presented.  Exh. 82, p. 3.

As discussed above in ground 10, trial testimony reflected that when police located the victim's vehicle, the license plates had been changed.  Exh. 28, pp. 132-133.  Defense counsel had already objected that this was prejudicial bad act testimony, and the district court had already denied the motion for a mistrial with respect to this testimony.  *Id.* at 104-106.

Lions has not demonstrated that the Nevada Supreme Court's decision is contrary to, or involves an unreasonable application of, *Strickland v. Washington*, or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d).

In ground 1(C) Lions argues that trial counsel failed to use reasonable diligence to locate defense witnesses that would have corroborated that Lions "squatted" at the residence in question and would have contradicted the prosecutor's statement in closing arguments that Lions never stayed at the residence (ECF No. 10, pp. 6-9).

1

2

The Nevada Supreme Court explained that Lions failed to demonstrate deficiency or prejudice:

3

4

5

6

> Appellant's claim was belied by the record as counsel stated during an argument on a motion for mistrial that a defense investigator did interview the neighbors. *See Harqrove v. State*, 100 Nev. 498, 503, 686 P.2d 222, 225 (1984). Further, the testimony of the investigating officers corroborated appellant's claim that squatters used the residence, and accordingly he failed to demonstrate a reasonable probability of a different outcome had the neighbors testified as appellant hoped.

7

Exh. 82, p. 2.

8

9

10

11

12

13

14

15

16

17

As discussed with ground 8, trial testimony reflected that squatters sometimes used the residence. Exh. 28, p. 62-64,181, 191, 194. This court notes that even if defense witnesses testified that Lions squatted at the residence, the evidence reflected that Lions' DNA was identified on the cord used to strangle the victim and that the victim could not be excluded as a minor contributor to the DNA mix identified, the victim stated that he could not identify Lions for sure but that he resembled the attacker, the victim's car was found in Lions' possession, and a wire transfer was attempted from the victim's stolen credit card to Lions. Exh. 28, pp. 25, 109-110, 132-133, 213-214. Accordingly, the Nevada Supreme Court did not unreasonably conclude that Lions could not show prejudice.

18

19

20

21

 Lions has not demonstrated that the Nevada Supreme Court's decision was contrary to, or involved an unreasonable application of, *Strickland v. Washington*, or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d).

22

23

24

25

In ground 1(D) Lions contends that trial counsel failed to object that the transcript of Lions' interview with a police detective introduced at trial was incomplete, and the omission of the detective's questioning Lions as to whether Lions thought he might have been set up was prejudicial (ECF No. 10, pp. 9-10; ECF No. 40, pp. 8-9).

26

The state supreme court affirmed the denial of this claim:

27

28

> Part of what appellant claimed was missing was in fact testified to at trial by the interviewing officer, and appellant did not claim that he told

14

1
2
3

counsel of any discrepancy.  Further, in light of the physical evidence
against him, appellant failed to demonstrate a reasonable probability of a
different outcome had the jury heard the allegedly missing portions of the
interview.

4

Exh. 82, p. 3.

5
6
7
8
9
10

The police detective who interviewed Lions testified that Lions told him that he

bought the car, though Lions said he was suspicious about the car and the seller never

gave him the title or other proof of ownership but did give him a receipt for the sale.

Exh. 28, p. 165.  The detective also testified that Lions never admitted to the robbery or

state that he had ever been at the scene of the robbery, nor did he claim to have any

connection to the residence where the robbery took place.  *Id.* at 174.

11
12
13
14
15
16

Again, in light of the physical evidence, the Nevada Supreme Court did not

unreasonably conclude that Lions could not show prejudice.  Lions has not

demonstrated that the Nevada Supreme Court's decision is contrary to, or involves an

unreasonable application of, *Strickland v. Washington*, or was based on an

unreasonable determination of the facts in light of the evidence presented in the state

court proceeding.  28 U.S.C. § 2254(d).

17
18
19
20
21
22

In ground 1(E) Lions asserts that trial counsel failed to object to the prosecutor's

misconduct in stating during closing arguments that Lions claimed to have stayed at the

residence in question only after he heard a detective's testimony that squatters stayed

there (ECF No. 10, pp. 10-12).  In ground 1(F) he claims that trial counsel failed to

object that the prosecutor attempted to shift the burden of proof by suggesting that

Lions never told the detective he used to stay at the residence (ECF No. 10, pp. 10-14).

23

The Nevada Supreme Court affirmed the denial of these claims and reasoned that

24
25
26

The State did not call appellant a "liar" nor did it shift the burden of
proof to appellant.  Rather, the State made a permissible comment on its
view of what the evidence showed.  *See id.*  Moreover, the jury was made
aware by the officer's testimony on cross-examination that appellant had
not been told during the interview where the attack occurred.

27

Exh. 82, p. 4.

28

The Nevada Supreme Court did not unreasonably conclude that Lions could not show prejudice.  He has failed to carry his burden of demonstrating that the Nevada Supreme Court's decision was contrary to, or involved an unreasonable application of, *Strickland v. Washington*, or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  28 U.S.C. § 2254(d).

In grounds 1(G) and 1(H) Lions argues that trial counsel failed to propose that the jury be instructed on lesser included offenses with respect to the grand larceny auto and robbery charges (ECF No. 10, pp. 14-16).

In affirming the denial of these claims, the Nevada Supreme Court pointed out that the jury found Lions guilty beyond a reasonable doubt of the greater offenses and Lions failed to demonstrate a reasonable probability of a different outcome if the jury had received instructions on the lesser offenses.  Exh. 82, pp. 4-5.

Lions merely states in conclusory fashion that the results of the trial would have been different if they jury had been "given some middle ground for Lions' culpability" (ECF No. 40, p. 13).  He has failed to carry his burden of demonstrating that the Nevada Supreme Court's decision is contrary to, or involves an unreasonable application of, *Strickland v. Washington*, or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  28 U.S.C. § 2254(d).

As to the last claim of trial counsel error, in ground 1(I) Lions contends that he and trial counsel had a conflict; counsel disliked Lions based on her past representation of Lions' girlfriend.  Lions claims that counsel refused to call the girlfriend as a trial witness even though the girlfriend was with Lions when he purchased the vehicle he was convicted of stealing (ECF No. 10, pp. 16-17).

The Nevada Supreme Court affirmed the denial of this claim:

> The State's expert recovered DNA from the area of the ligature that the attacker would have to have held and concluded that appellant was the major contributor with the victim being the minor contributor.  In light of this evidence as well as other, circumstantial evidence adduced at trial, appellant failed to demonstrate a reasonable probability of a different

16

outcome had Moore, appellant's girlfriend at the time, testified that she saw appellant buy the stolen vehicle from a third party.  To the extent appellant claimed that counsel's inaction was due to a conflict of interest, his claim was unsupported by specific facts that, if true, would have demonstrated that an actual conflict existed or that counsel's performance was adversely affected.  *See Clark v. State*, 108 Nev. 324, 326, 831 P.2d 1374, 1376 (1992); *Hargrove*, 100 Nev. at 502-03, 686 P.2d at 225.  We therefore conclude that the district court did not err in denying this claim.

Exh. 82, p. 3.  Especially in light of the physical evidence, Lions has failed to carry his burden of demonstrating that the Nevada Supreme Court's conclusion that he could not show prejudice as to ground 1(I) was contrary to, or involved an unreasonable application of, *Strickland v. Washington*, or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  28 U.S.C. § 2254(d).

Accordingly, ground 1 is denied in its entirety.

**Ground 2**

Lions asserts three claims that his appellate counsel rendered ineffective assistance in violation of his Sixth and Fourteenth Amendment rights (ECF No. 10, pp. 19-21).

Lions contends in ground 2(A) that appellate counsel was ineffective for failing to raise a claim that the trial court erred in overruling an objection pursuant to *Brady* based on the fact that the State's DNA expert testified that about five DNA samples were identified on the weapon, while her report stated that there were "at least two" DNA contributors on the weapon (ECF No. 10, pp. 19-20; Exh. 28, pp. 213-215).

The Nevada Supreme Court affirmed the denial of this claim:

Appellant failed to demonstrate deficiency or prejudice because his claim was belied by the record.  Appellant acknowledged that the expert's report said there were "at least," two contributors of DNA to the ligature, which necessarily admits the possibility of more than two contributors. Further, although appellant claimed that the expert testified that there were in fact five contributors of DNA, the expert testified in accordance with her report that "two numbers" at a DNA reference point would indicate one DNA contributor and that at a couple of the reference points, there were "five numbers," indicating "at least two" contributors.  The expert

> further testified that she could not identify who the contributors were beyond appellant and the victim, but she did not state a reason.

Exh. 82, pp. 5-6.  Ground 2(A) is belied by the record and is meritless.

Lions argues in ground 2(B) that appellate counsel failed to raise a claim that the detective failed to gather and preserve evidence when he did not record a witness' contact information to whom he spoke about unauthorized vehicles parked at the residence (ECF No. 10, pp. 20-21).   The Nevada Supreme Court affirmed the denial of this claim, pointing out that on direct appeal it had previously held that that the State did not violate *Brady* when it failed to disclose the neighbor's contact information because "there was no possibility" of the information having affected the outcome of trial.  Exh. 82, p. 6.

As discussed above with respect to ground 3, the Nevada Supreme Court did not unreasonably conclude on direct appeal that no *Brady* error occurred with respect to the identity of any neighbors.  Accordingly, ground 2(B) lacks merit.

Lastly in ground 2, as 2(C) Lions argues that appellate counsel failed to raise the claim that the trial court erred in overruling an objection that other bad act evidence— Lions' use of the victim's credit card—was admitted at trial without a *Petrocelli* hearing or a limiting instruction (ECF No. 10, p. 21).

The Nevada Supreme Court reasoned that, although the trial court erred in admitting evidence of the attempted use of the victim's credit card to wire money to Lions without first conducting an evidentiary hearing, the evidence was relevant as it tended to establish the identity of the attacker.  The state supreme court further noted that Lions could not demonstrate prejudice because "in light of the physical evidence against appellant, any failure to instruct the jury on the limited use of the evidence would have been harmless."  Exh. 82, pp. 6-7.

Lions has failed to demonstrate that the Nevada Supreme Court's decisions that he challenges in ground 2 were contrary to, or involved an unreasonable application of,

18

*Strickland v. Washington*, or were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  28 U.S.C. § 2254(d).

Accordingly, ground 2 is denied it its entirety.

**C. Cumulative Error**

**Ground 12**

Finally, Lions claims that the cumulative effect of the trial errors violated his Fourteenth Amendment rights to due process and a fair trial (ECF No. 10-1, p. 3). Respondents argue first that cumulative error should not be cognizable in federal habeas corpus, though they acknowledge that the Ninth Circuit has held that the doctrine of cumulative error creates a cognizable federal habeas claim (ECF No. , p. 21; *compare Parle v. Runnels*, 505 F.3d 922, 928-929 (9th Cir. 2007), with *Moore v. Parker*, 425 F.3d 250, 256 (6th Cir. 2005)).  Respondents also point out that if a cumulative error claim is cognizable, the alleged errors must have so infected the trial with unfairness as to make the resulting conviction a denial of due process.  *Parle*, 505 F.3d at 928.

The Nevada Supreme Court reasonably concluded that two errors occurred during trial:  the district court erred by giving the flight instruction (federal ground 8); and the district court erred in not conducting a *Petrocelli* hearing or giving the jury a limiting instruction with respect to the uncharged bad act evidence of the switched license plate on the vehicle (federal ground 10).  However, the state supreme court also reasonably concluded, as discussed above, the both errors were harmless in light of the physical evidence presented at trial.  Lions has not demonstrated any errors that so infected the trial with unfairness as to make his conviction a denial of his due process rights. Ground 12 is, therefore, denied.

Accordingly, the petition is denied in its entirety.

**IV.    Certificate of Appealability**

This is a final order adverse to the petitioner.  As such, Rule 11 of the Rules Governing Section 2254 Cases requires this court to issue or deny a certificate of appealability (COA).  Accordingly, the court has *sua sponte* evaluated the claims within

19

the petition for suitability for the issuance of a COA.  *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864-65 (9th Cir. 2002).

Pursuant to 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right."  With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)).  For procedural rulings, a COA will issue only if reasonable jurists could debate (1) whether the petition states a valid claim of the denial of a constitutional right and (2) whether the court's procedural ruling was correct.  *Id.*

Having reviewed its determinations and rulings in adjudicating Lions' petition, the court finds that none of those rulings meets the *Slack* standard.  The court therefore declines to issue a certificate of appealability for its resolution of any of Lions' claims.

## V.   Conclusion

**IT IS THEREFORE ORDERED** that the petition (ECF No. 10) is **DENIED** in its entirety.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

**IT IS FURTHER ORDERED** that petitioner's motion for status check (ECF No. 42) is **DENIED** as moot.

**IT IS FURTHER ORDERED** that the Clerk shall enter judgment accordingly and close this case.

Dated: This 12th day of December, 2016.

_____
ROBERT C. JONES
UNITED STATES DISTRICT JUDGE